IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUBHASH MANNAVA,<br><br>                      Plaintiff,<br><br>    v.<br><br>TD AMERITRADE, INC., WEBULL FINANCIAL, LLC, APBEX CLEARING CORPORATION, ROBINHOOD FINANCIAL, LLC and BANK OF AMERICA,<br><br>                      Defendants. | Case No. 21-CV-1303<br><br>Hon. Matthew F. Kennelly |

## MOTION TO COMPEL ARBITRATION

Defendant Robinhood Financial LLC ("Robinhood") hereby moves this Court, pursuant to the Federal Arbitration Act, to compel plaintiff Subhash Mannava ("Mannava" or "Plaintiff") to arbitrate the claims asserted against Robinhood in this action.

**I.    FACTS**

1.    Robinhood is a brokerage firm that offers its customers, primarily through a mobile application (the "Robinhood App"), brokerage accounts and related services. Using the Robinhood App, a customer can buy or sell stock in companies listed on various U.S. and global stock exchanges.

2.    To create an account with Robinhood, a customer may download the Robinhood App to their mobile device. The Robinhood App then takes the customer through various screens, via which Robinhood collects the new customer's name, contact information, and other information necessary for the establishment of a brokerage account. Declaration of Melissa Kincaid (" Kincaid Decl.") ¶ 3.

3. One screen of this process contains an explanation of the agreements that a customer must accept to access the various services provided by Robinhood, with links to the full agreements in bright green. Kincaid Decl. ¶ 5. At the bottom of the screen is a button labeled "submit application." *Id*. In text immediately above this button, which is in all capital letters, the Robinhood App explains to the user that, by tapping or clicking on the "submit application" button, the user is agreeing to open an account "UNDER ALL OF THE AFOREMENTIONED TERMS AND CONDITIONS." *Id*. A customer cannot create an account with Robinhood without navigating through this screen and clicking on the "submit application" button. *Id*.

    **A.**     <u>**Mannava Enters into an Agreement to Arbitrate Disputes with Robinhood**</u>

4. When Mannava created an account with Robinhood, he agreed to the Robinhood Financial LLC & Robinhood Securities, LLC Customer Agreement (the "Customer Agreement"). *See* Kincaid Decl. ¶ 5. A true and correct copy of the version of the Customer Agreement in effect at the time Mannava created his account is attached to the Kincaid Decl. as Exhibit A.

5. As set forth in bold text and in all capital letters on the front of the Customer Agreement, Mannava agreed that:

> **I UNDERSTAND THAT THE TERMS AND CONDITIONS OF THIS AGREEMENT GOVERN ALL ASPECTS OF MY RELATIONSHIP WITH [ROBINHOOD] REGARDING MY ACCOUNTS. I WILL CAREFULLY READ, UNDERSTAND, AND ACCEPT THE TERMS AND CONDITIONS OF THIS AGREEMENT BEFORE I CLICK 'SUBMIT APPLICATION' OR OTHER SIMILARLY WORDED BUTTON. . . . I UNDERSTAND THAT CLICKING 'SUBMIT APPLICATION' IS THE LEGAL EQUIVALENT OF MY MANUALLY SIGNING THIS AGREEMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. . . . I UNDERSTAND THAT THIS AGREEMENT MAY BE AMENDED FROM TIME TO TIME BY ROBINHOOD, WITH REVISED TERMS POSTED ON THE ROBINHOOD WEBSITE. . . . I UNDERSTAND THAT BY**

**CONTINUING TO MAINTAIN MY SECRITIES BROKERAGE ACCOUNT WITHOUT OBJECTING TO ANY REVISED TERMS OF THIS AGREEMENT, I AM ACCEPTING THE TERMS OF THE REVISED AGREMENT AND I WILL BE LEGALLY BOUND BY ITS TERMS AND CONDITIONS. . . . I ALSO UNDERSTAND THAT BY CLICKING 'SUBMIT APPLICATION' I HAVE ACKNOWLEDGED THAT THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE IN SECTION 38 HEREIN**.

Kincaid Decl. Ex. A at 1.

6. The Customer Agreement requires the parties to arbitrate their disputes: "[a]ny controversy or claim arising out of or relating to this Agreement, any other agreement between Me and Robinhood, any Account(s) established hereunder, any transaction therein, shall be settled by arbitration in accordance with the rules of FINRA Dispute Resolution, Inc." Kincaid Decl. Ex. A § 38.

7. The Customer Agreement was updated in June 2021. Kincaid Decl. ¶ 6. The updated version of the Customer Agreement also requires the parties to arbitrate disputes: "[a]ny controversy or claim arising out of or relating to this Agreement, any other agreement between you and Robinhood, any Account established hereunder, any transaction therein, shall be settled by arbitration before FINRA Dispute Resolution, Inc." Kincaid Decl. Ex. B § 39.

B. <u>Mannava Asserts Claims Relating to the Agreement against Robinhood</u>

8. Plaintiff initiated this action in Illinois state court against defendant TD Ameritrade, Inc., who subsequently removed the case to this Court. Following removal, Mannava amended his complaint to name Robinhood, among others, as additional defendants. Docket Entry ("D.E.") Nos. 1, 9.

9.  Mannava filed the operative Second Amended Complaint on June 3, 2021. D.E. No. 21. That pleading contains claims against Robinhood for conversion (Count XIII), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count XIV), constructive trust (Count XV), and for an accounting (Count XVI). D.E. No. 21 ¶¶ 159-95.

10. Mannava alleges that he created an account with Robinhood "[p]rior to December of 2020" and that he "made various transfers from his Robinhood . . . accounts to [defendant TD Ameritrade, Inc.]." D.E. No. 21 ¶¶ 11, 13.

11. Mannava further asserts that, due to an alleged "clerical error" by Robinhood, a "chain reaction" occurred that caused Mannava's "accounts with Defendants being 'frozen' due to 'potential fraud.'" D.E. No. 21 ¶¶ 14, 18.

12. Mannava alleges that, due to the "freezing" of his various accounts, he has been unable to access funds or to trade stocks and commodities, his primary source of income. *See* D.E. No. 21 ¶¶ 12, 26, 40.

13. Notably, Mannava makes no allegation that Robinhood is holding any funds belonging to Plaintiff or that Robinhood ever froze Mannava's Robinhood account. *See generally* D.E. No. 21 ¶¶ 11-47.

**II.  ARGUMENT**

14. The Court should compel Mannava to arbitrate his claims against Robinhood, because the Customer Agreement is a valid agreement to arbitrate between Robinhood and Mannava and all of the claims contained in the Second Amended Complaint are within the scope of the arbitration agreement.

A.  **Mannava Entered into an Enforceable Arbitration Agreement With Robinhood**

15. By creating an account with Robinhood, Mannava agreed to be bound by the Customer Agreement, including its valid and enforceable arbitration clause.

16. Under the Federal Arbitration Act, agreements to arbitrate are "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011).

17. Agreements to arbitrate made by a consumer for an online service are likewise enforceable, so long as the reasonable notice was provided to the consumer of: (1) the terms and conditions of the agreement, and (2) that the consumer was assenting to the agreement. *Gorny v. Wayfair Inc.*, 2019 WL 2409595, at *5 (N.D. Ill. June 7, 2019); *see also Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959, 965-66, 968 (N.D. Ill. 2020); *Johnson v. Uber Techs., Inc.*, 2018 WL 4503938, at *4 (N.D. Ill. Sept. 20, 2018).

18. Where clear and conspicuous text explains to the user that they are agreeing to the terms of an agreement available via a hyperlink – by stating, for example, that "by creating an account you agree to the terms of service" – reasonable notice has been provided. *Acaley*, 464 F. Supp. 3d at 966-67; *see also Gorny*, 2019 WL 2409595, at *5; *Johnson*, 2018 WL 4503938, at *4.

19. Here, the Robinhood App contains the precise language that satisfies the reasonable notice standard: that by clicking on the "submit application" button, the customer is agreeing to the terms of the Customer Agreement. *See* Kincaid Decl. ¶ 5.

20. Accordingly, the Customer Agreement is an enforceable agreement to arbitrate.

B. **The Court Should Compel Arbitration of the Claims Against Robinhood in the Second Amended Complaint**

21. Because Mannava entered into an enforceable arbitration agreement with Robinhood, the Court should compel Mannava to arbitrate all of his claims against Robinhood that are asserted in the Second Amended Complaint and stay this action as against Robinhood.

22. Once a party has established the existence of an agreement to arbitrate, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns*, 666 F.3d 1027, 1032 (7th Cir. 2012).

23. Here, the arbitration provision contained in the Customer Agreement encompasses all the claims in the Second Amended Complaint, providing that "[a]ny controversy or claim" that is either "arising out" or "relating to" the Customer Agreement, the accounts created pursuant to the Customer Agreement, or any transactions within those accounts "shall be settled by arbitration." Kincaid Decl. Ex. A § 38.

24. Use of the phrase "arising out of" "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." *Gore*, 666 F.3d at 1033 (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)); *see also Gorny*, 2019 WL 2409595, at *3 ("The Seventh Circuit has described [the terms 'arising out of or relating to'] as 'a very broad, standard arbitration clause,' the likes of which courts have 'naturally been willing to read . . . quite broadly to include all manner of claims tangentially related to the agreement, including claims of fraud, misrepresentation, and other torts involving both contract formation and performance.'") (quoting *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002)).

25. All of Mannava's claims against Robinhood in the Second Amended Complaint have their genesis in the Customer Agreement.

26. First, Mannava's claim for conversion allegedly stems from "funds and accounts that have been frozen by Robinhood," and whether, as Mannava asserts, he "has an absolute and unconditional right to the immediate possession of the funds and accounts." D.E. No. 21 ¶¶ 160-62. Such a claim directly arises from the account that Mannava created with Robinhood and from the terms and conditions of the Customer Agreement and, therefore, is subject to the agreement to arbitrate.

27. Similarly, Mannava's claim under the Illinois Consumer Fraud and Deceptive Business Practices Act also relates to the Customer Agreement. A statutory consumer protection claim based upon a product or service sold as part of a transaction in which the consumer executed an arbitration agreement "aris[es] out of" or "relat[es] to" that arbitration agreement. *See Gorny*, 2019 WL 2409595, at *3. This claim is also subject to the agreement to arbitrate.

28. Third, Mannava bases his constructive trust claim on the allegation that "Robinhood [] gained control over Plaintiff's accounts and assets" and that "Robinhood is in wrongful possession of the assets." D.E. No. 21 ¶ 185. Again, this claim directly arises from Mannava's Robinhood account and therefore the Customer Agreement requires this claim to be arbitrated.

29. Finally, Mannava's accounting claim arises from Robinhood's alleged "refus[al] to provide Plaintiff with the information regarding his accounts and assets, despite request therefor." D.E. No. 21 ¶ 195. This claim is therefore also inextricably tied to Mannava's Robinhood account and is subject to the arbitration provision in the Customer Agreement.

PHIL1 9593928v.2

### III. CONCLUSION

30. For the reasons set forth above, Robinhood respectfully requests that the Court grant its Motion, compel plaintiff Mannava to arbitrate all of his claims against Robinhood, stay this case as against Robinhood pending the completion of such arbitration, and grant such other and further relief as the Court deems proper and just.

Dated: August 9, 2021

Respectfully submitted,

*/s/ Paige M. Willan*

Michael K. Coran (admitted *pro hac vice*)
Paige M. Willan (admitted *pro hac vice*)
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
(215) 569-2700 (telephone)
(215) 568-6603 (facsimile)
mcoran@klehr.com
pwillan@klehr.com

Richard Z. Wolf
Horwood Marcus & Berk Chartered
500 West Madison, Suite 3700
Chicago, IL 60661
(312) 606-3200 (telephone)
(312) 606-3232 (facsimile)
rwolf@hmblaw.com

*Attorneys for Defendant Robinhood Financial, LLC*

PHIL1 9593928v.2