UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUBHASH MANNAVA, <br><br> Plaintiff, <br><br> v. <br><br> TD AMERITRADE, INC., WEBULL FINANCIAL LLC, APEX CLEARING CORPORATION, ROBINHOOD FINANCIAL, LLC, and BANK OF AMERICA CORPORATION, <br><br> Defendants. | Case No. 21 C 1303 <br><br> Hon. Matthew F. Kennelly <br><br> Mag. Judge M. David Weisman |

**Defendant Webull Financial LLC and Defendant Apex
Clearing Corporation's Joint Motion to Dismiss under
Fed. R. Civ. P. 12(b)(3) for Improper Venue or, Alternatively,
to Stay and Compel Arbitration under the Federal Arbitration Act**

When Plaintiff Subhash Mannava created an account with Defendant Webull Financial LLC, he agreed to arbitrate any disputes that might arise between him and Webull or its clearing firm, Defendant Apex Clearing Corporation. Webull and Apex therefore jointly move to enforce that agreement and request that the Court either dismiss Plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(3) for improper venue or, alternatively, stay the claims and compel arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 3, 4.

## Background

Defendant Webull Financial LLC ("Webull") is a registered broker-dealer. Webull offers a cutting-edge electronic platform through which customers can invest,

commission free, in stocks, exchange-traded funds, options, and American depositary receipts on a self-directed basis. *See* Ex. A, Decl. of Shen Lu, at ¶ 2. Defendant Apex Clearing Corporation ("Apex") is a clearing firm. *See* Ex. H, Decl. of Michael Oxley, at ¶ 2. A clearing firm is a company that provides "clearing services" to brokerage firms (called "correspondents" or "introducing brokers") like Webull. *See id.* For some brokerage firms, it is impractical to take on the back-office burden of keeping customer funds and securities, executing trades on national exchanges, or preparing and transmitting trade confirmations or account statements for customers. *See id.* To avoid the administrative burdens imposed by those back-office tasks, broker-dealers like Webull contract with "clearing firms" like Apex. *See id.* Webull introduces all securities transactions to Apex on a fully disclosed basis for comparison, allocation, clearance, and settlement. *See* Ex. A at ¶ 3. Apex holds all Webull customers' accounts and delivers funds and securities to customers on Webull's behalf. *See id.*

Plaintiff Subhash Mannava created an account with Webull on December 18, 2020. *See* Ex. A at ¶ 4; Ex. H at ¶ 3. In doing so, Plaintiff was presented with several agreements, including (1) a Customer Account Agreement, (2) a Customer Margin & Short Account Agreement, and (3) a Webull Financial Options Agreement. *See* Ex. A at ¶ 5. Each one of these agreements includes a provision binding the parties— Webull, Apex, and Plaintiff—to arbitration in the event of a dispute arising from the parties' relationship. *See id.* at ¶¶ 6–8; Ex. B, Customer Account Agreement, § 8; Ex. C, Customer Margin & Short Account Agreement, § 10; Ex. D, Webull Financial Options Agreement, § 15.

The Customer Account Agreement and Customer Margin & Short Account Agreement both contain, in capitalized text, the following arbitration provision:

> Any and all controversies, disputes[,] or claims between the Customer and you, or the Introducing Broker . . . arising out of, in connection with, from[,] or with respect to (a) any provisions of or the validity of this Agreement or any related agreements, (b) the relationship of the parties hereto, or (c) any controversy arising out of your business, the introducing broker's business[,] or the Customer's accounts shall be conducted pursuant to the Code of Arbitration Procedure of the Financial Industry Regulatory Authority ("FINRA").

Ex. B, § 8; Ex. C, § 10. Both agreements define "Customer" as the signatory (here, Plaintiff), "you" and "your" as referring to Apex, and "Introducing Broker" as the brokerage firm (here, Webull). *See* Ex. B at 1; Ex. C, § 2. And the agreements put the arbitration consent in even clearer terms—stating that "all parties to this Agreement are giving up the right to sue each other in court . . . ." Ex. B, § 8; Ex. C, § 10.

The Webull Financial Options Agreement contains a differently worded arbitration provision, stating:

> The undersigned agrees, and by carrying an account of the undersigned you agree, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.

Ex. D, § 15. Like the other agreements, the Options Agreement includes as parties Plaintiff, Webull, and Apex. *See id.* at 1.

Plaintiff agreed to all three of these agreements, including their arbitration provisions, when he created his Webull account. *See* Ex. H at ¶¶ 4–8. Plaintiff was

3

presented with a page displaying the agreements, among other documents. *See* Ex. A at ¶¶ 9–11; Ex. E, Desktop Representation; Ex. F, Mobile App Representation. He then electronically signed the following acknowledgement:

> I have read, understood[,] and accepted the terms and conditions provided [during the account opening process.] I will comply with all terms of the [Client/User] Agreement (*including the pre-dispute arbitration clauses at the end of the Agreement*) and all other agreements and disclosures provided to me above . . . .

*Id.* (emphasis added); Ex. A at ¶ 12; Ex. G, Mannava Signature; Ex. H at ¶¶ 4–8; Ex. I, JSON Output. Only once Plaintiff entered his signature, a button appeared that said, "I Agree," and Plaintiff clicked the button to proceed with his account creation. *See* Ex. A at ¶ 12. Plaintiff could not have created a Webull account without agreeing to the Customer Account Agreement, Customer Margin & Short Account Agreement, and Webull Financial Options Agreement. *See id.* at ¶ 13.

According to Plaintiff, later that month several financial accounts of his, including the Webull account, were flagged for potential fraud and frozen as a result. *See* Second Am. Compl., ECF No. 21. Plaintiff has now filed a lawsuit based on those allegations, including claims against Webull and Apex for purportedly unlawfully withholding funds from him. *See id.*

## Argument

The Federal Arbitration Act provides that a contractual agreement to arbitrate disputes arising from the contract or transaction is "valid, irrevocable, and enforceable," 9 U.S.C. § 2, and "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been

4

signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). This reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract," "plac[ing] arbitration agreements on an equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up).

Plaintiff must arbitrate his claims if (1) a valid arbitration agreement exists between him, Webull, and Apex; and (2) his claims fall within the scope of that agreement. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019). Both are true here.

State-law contract principles apply to the analysis of these questions. *See id.* at 710–11. Two of the three contracts at issue—the Customer Account Agreement and Customer Margin & Short Account Agreement—include choice-of-law provisions selecting Texas law to govern them, Ex. B, § 15; Ex. C, § 20, and Webull and Apex therefore assert that Texas law applies to this motion. But, to the extent Plaintiff disagrees, Illinois law would compel no different conclusion.

**I.   A valid arbitration agreement exists between Plaintiff, Webull, and Apex.**

The touchstone of contract formation is agreement—an offer by one party, accepted by the other, with a meeting of the minds as to the terms. *See, e.g.*, *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 235–36 (5th Cir. 2021) ("[U]nder Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and

binding." (citation omitted)); *Gupta*, 934 F.3d at 712 ("In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." (citation omitted)).

Critically, "[a] contract has nothing to do with the personal, or individual, intent of the parties." *Gupta*, 934 F.3d at 711 (cleaned up). So when determining whether mutual assent existed, what matters is not either party's subjective intent but rather their objective conduct. *See id.* at 711–12 (explaining that it is "the parties' objective conduct" that governs, "not any one party's 'general understanding' or 'actual knowledge'"); *Dean v. Biggs & Greenslade, PC*, No. H-21-0242, 2021 WL 2002440, at *3 (S.D. Tex. May 19, 2021) ("The determination of a meeting of the minds, and thus offer and acceptance, is based on the objective standard of what the parties said and did and not on their subjective state of mind." (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 280 (5th Cir. 2012)).

Here, Plaintiff's objective conduct leaves no doubt that he assented to the Customer Account Agreement, Customer Margin & Short Account Agreement, and Webull Financial Options Agreement, along with each of their arbitration provisions. Plaintiff was provided with hyperlinks to the agreements. *See* Ex. A at ¶¶ 5, 11; Ex. E; Ex. F. Plaintiff then signed an acknowledgement that he "read, understood[,] and accepted" the terms of his account creation, including the contracts containing the arbitration agreements. *See id.*; Ex. A at ¶ 12; Ex. G; Ex. H at ¶¶ 4–8; Ex. I. And Webull and Apex even emphasized the mandatory arbitration agreement by highlighting it in the acknowledgment paragraph right next to the signature field.

6

*See* Ex. A at ¶ 11; Ex. E; Ex. F. Plaintiff's agreement can be made no clearer than when he clicked a button saying exactly that—"I Agree." *See* Ex. A at ¶ 12.

Courts in both Illinois and Texas have found arbitration agreements formed under similar circumstances to be enforceable. *See, e.g.*, *Wang v. TD Ameritrade, Inc.*, No. 20 C 4028, 2020 WL 9219398, at *2 (N.D. Ill. Dec. 17, 2020) (enforcing arbitration agreement where declaration established that "[Plaintiff] clicked 'I agree' when asked whether he agreed to the [ ] arbitration agreement"); *Klebba v. Netgear, Inc.*, No. 1:18-CV-438-RP, 2019 WL 453364, at *5 (W.D. Tex. Feb. 5, 2019) (finding agreement where Plaintiff "must have either checked the checkbox or clicked the 'Agree' button at the bottom of the Terms" containing the arbitration provision to create the account); *Yiru v. WorldVentures Holdings LLC*, No. 3:17-CV-02155-S, 2018 WL 4346158, at *3 (N.D. Tex. Sept. 11, 2018) ("It is well established under Texas law that assent through an affirmative 'click' is sufficient to bind the parties." (collecting cites)); *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *5 (N.D. Ill. June 12, 2018) (finding agreement where Plaintiffs "had to affirmatively check a box, or click a button, indicating that they accepted the user agreement" with the arbitration provision and had the opportunity to review the terms through a link or scroll box).

Webull and Apex gave Plaintiff reasonable notice of the arbitration provisions, and Plaintiff unambiguously agreed to them, both through his electronic signature and by clicking, "I Agree." And in consideration, Plaintiff received access to Webull and Apex's services (in addition to the companies' mutual promise to arbitrate). The

7

parties therefore formed an agreement to arbitrate their disputes, and that agreement must now be enforced.

## II. Plaintiff's claims against Webull and Apex fall within the scope of the arbitration agreement.

The next question is whether Plaintiff's claims against Webull and Apex fall within the scope of the arbitration provisions. All three provisions broadly state that all disputes relating to the agreements must be resolved by arbitration. *See* Ex. B, § 8; Ex. C, § 10 (stating that "[a]ny and all controversies . . . with respect to . . . any provisions of or the validity of this agreement" must be arbitrated); Ex. D, § 15 (stating that "all controversies which may arise between us, including . . . those involving . . . the construction . . . of this . . . agreement" must be arbitrated). These are delegation clauses reflecting an agreement that an arbitrator must decide any arbitrability issues like those about scope. *See, e.g., Maravilla v. Gruma Corp.*, 783 F. App'x 392, 396 (5th Cir. 2019) (finding the following to be a valid delegation clause: "[A]ny and all claims and causes of action arising out of or relating to this Agreement including, without limitation, matters relating to enforceability of all or any part of this Agreement" (cleaned up)).

Even if this Court were to reach the scope of the arbitration provisions, Plaintiff's claims fit well within them. The Customer Account Agreement and Customer Margin & Short Account Agreement's arbitration provisions reach all disputes related to "the relationship of the parties" and "any controversy arising out of [Apex's] business, [Webull's] business[,] or the Customer's accounts." Ex. B, § 8; Ex. C, § 10; *see Penson Fin. Servs., Inc. v. MISR Sec. Int'l*, No. CIVA307CV0372B,

2007 WL 4322150, at *2 (N.D. Tex. Dec. 10, 2007) (construing a nearly identical arbitration provision and noting that it "sweeps broadly" to include claims related to the account). And, even if those agreements did not apply (which they do), the Financial Options Agreement's provision extends to "all controversies which may arise between [the parties]." Ex. D, § 15. Plaintiff's claims against Webull and Apex all relate to their handling of his account, a subject area unquestionably within the broad scope of the arbitration provisions.

### III. Plaintiff's claims against Webull and Apex should be dismissed or, alternatively, stayed and sent to arbitration.

Plaintiff's claims against Webull and Apex belong in arbitration, not the courthouse. Webull and Apex request that the claims against them be dismissed under Rule 12(b)(3) for improper venue. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 807 (7th Cir. 2011) ("[A] motion to dismiss based on a contractual arbitration clause is appropriately conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3)." (cleaned up)). Alternatively, they request that the Court stay these proceedings and compel arbitration under Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§ 3, 4. *See Lukis v. WhitePages Inc.*, No. 19 C 4871, 2021 WL 3022319, at *4–5 (N.D. Ill. July 16, 2021) (explaining that "[t]here is precedent to support both" dispositions in the Seventh Circuit).

Webull and Apex submit that the papers alone establish that Plaintiff's claims against them must be arbitrated. But if the Court requires additional argument or evidence, Webull and Apex request a hearing pursuant to 9 U.S.C. § 4.

9

Date: August 9, 2021							Respectfully submitted,

							*/s/ Andrea L. Evans*
							SALVATORE PRESCOTT PORTER &
							PORTER, PLLC

							Andrew C. Porter
							Andrea L. Evans
							1010 Davis Street
							Evanston, IL 60201
							(312) 283-5711
							aporter@sppplaw.com
							evans@sppplaw.com

							*Attorneys for Defendant Webull*
							*Financial LLC and Defendant Apex*
							*Clearing Corporation*

10

**<u>Certificate of Service</u>**

I certify that on August 9, 2021, I caused copies of the foregoing to be served on all counsel of record by filing electronic copies with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all registered CM/ECF users.

<u>/s/ Andrea L. Evans</u>