# EXHIBIT D

**WEBULL FINANCIAL OPTIONS AGREEMENT**

This option agreement sets forth the respective rights and obligations arising in connection with any transaction by you (Webull Financial LLC and Apex Clearing Corporation) on my behalf including but not limited to, the purchase and sale of put and call options:

1. I wish to commit a portion of my funds to trading in options. I consider myself sophisticated in investment matters and am able to read and understand confirmation and monthly statements. I realize and understand that any form of option trading has a number of risks connected therewith. I understand that the risk associated with option trading is extremely high, and in maintaining an option account and engaging in option trading through the facilities of your firm, I am engaging in transactions of a speculative nature. In investing in an option contract, I am speculating that the price of the underlying security will not only move in the direction which I anticipate (i.e. the price will move up in the case of a call option and move down in the case of a put option), but that the price move of the underlying security will also exceed the premium which I pay for the option, commissions and other transaction costs. Thus, if the price movement is not sufficient, I could lose my entire investment in the option contract. If I write an option contract without depositing or owning the underlying security, I realize that my risk of loss is potentially unlimited. Notwithstanding this risk of loss I agree to honor all assignments and deliver to you the underlying security in the prescribed time, and if I fail to deliver the underlying security in the proper time, I designate you to act as my agent and buy in such stock at the current market price so that I may honor my commitment to deliver. I understand that my account will be debited for any loss and that you will charge me a commission and a fee for this service. I have sufficient income and other assets to sustain this risk inherent in such investments.

2. I will read the disclosure document entitled the Characteristics and Risks of Standardized Options available through www.webull.com or www.theocc.com , and any supplement thereto. I agree you shall not be held liable for risks such as those disclosed therein, including risks in connection with the execution, handling, purchasing, selling, and exercising of options for my account.

3. Any Decisions I make to enter into options transactions are entirely my own, and are made without any investment advice from you.

4. **Position Exercise Limits:** I agree to abide by all rules of the Options Clearing Corporation ("OCC"), or any securities exchange rules governing option transactions, including but not limited to position and exercise limit rules. Under the position limit rules, unless some different provision has been made by the OCC for a particular stock, no single investor or a group of investors acting in concert (regardless of whether the options are held in one or more accounts or through one or more brokers) may hold more than the allowable number of option contracts covering the same underlying stock or index on the CBOE or Amex, etc. Under the exercise limit rules, unless otherwise determined and announced by the OCC, no investor or group of investors acting in concert, within any five consecutive business days, may exercise more than the allowable number of options covering the same underlying security or index. The number of allowable contracts varies widely for different equity and index options.

5. I understand that if an option in my account is in the money and I do not hold sufficient equity in the account to support the underlying position if exercised than Webull will attempt to auto-liquidate the option position at any time on the date of expiration with a market order on a best efforts basis. Furthermore, I understand that long puts can only be exercised early in a cash account or margin account if the underlying shares are held long in the account, otherwise only in a margin account with sufficient equity can a long-put with no underlying shares be exercised. I understand that it's expected that I close any in the money option position 35 minutes prior to market close or else it's subject to be either auto liquidated or exercised. If my position is still open past then I understand that auto-liquidation is imminent and I will have up until the close to take market action to close the position myself. I understand the cut-off for submitting DNE instructions are up until the close on expiration date. I accept that instructions will be sent to OCC on a best efforts basis to Do Not Exercise (DNE) the option if the option is not liquidated and that Webull is not obligated to submit a DNE request. I understand that the OCC can reject the Do Not Exercise (DNE) if it is too profitable or for any other reason. I therefore waive any and all claims for damages or loss which I may incur at any time against you arising out of the fact that my option position was either liquidated or submitted to the OCC with DNE instructions. Additionally, this is in no way to be construed as an obligation on your part to sell or exercise such option on behalf of my account, and I therefore waive any and all claims for damages or loss which I may incur at any time against you arising out of the fact that any option in my account(s) was not exercised, unless I instructed you to do so. Furthermore, I understand that exercise requests are on a best efforts basis regardless of when it's submitted and will not hold Webull liable if an option is not exercised.

6. There are special risks associated with uncovered option writing that expose the investor to potentially significant losses. Therefore, this type of strategy may not be suitable for all customers approved for options transactions.

• The potential loss of uncovered call writing is unlimited. The writer of an uncovered call is in an extremely risky position and may incur large losses if the value of the underlying instrument increases above the exercise price.

• As with writing uncovered calls, the risk of writing uncovered put options is substantial. The writer of an uncovered put option bears the risk of loss if the value of the underlying instrument declines below the exercise price. Such loss could be substantial if there is a significant decline in the value of the underlying instrument.

• Uncovered option writing is thus suitable only for the knowledgeable investor who understands the risks, has the financial capacity and willingness to incur potentially substantial losses, and has sufficient liquid assets to meet applicable margin requirements. In this regard, if the value of the underlying instrument moves against an uncovered writer's options position, the investor's broker may request significant additional margin payments. If an investor does not make such margin payments, the broker may liquidate stock or options positions in the investor's account, with little or no prior notice in accordance with the investor's margin agreement.

• For combination writing, where the investor writes both a put and a call on the same underlying instrument, the potential risk is unlimited.

• If a secondary market in options were to be unavailable, investors could not engage in closing transactions, and an option writer would remain obligated until expiration or assignment.

• The writer of an American-style option is subject to being assigned an exercise at any time after he/she has written the option until the option expires. By contrast, the writer of a European- style option is subject to exercise assignment only during the exercise period.

NOTE: It is expected that you will read the booklet entitled CHARACTERISTICS AND RISKS OF STANDARDIZED OPTIONS available from your broker. In particular, your attention is directed to the chapter entitled Risks of Buying and Writing Options. This statement is not intended to enumerate all of the risks entailed in writing uncovered options.

7. I have previously received from you a disclosure document entitled "Characteristics and Risks of Standardized Options" and any supplement thereto. I acknowledge your procedures regarding by when exercise notices will be accepted by you. These procedures are as follows: Notice of exercise instructions must be given to you on normal business days at least one day prior to the expiration date no later than 4:30 pm EST. These may only be submitted via email or by phone. Any requests submitted on the expiration date will be processed on a best efforts basis. You will not be held liable for failure to tender an exercise if such notice is not received within the aforementioned time limitations. If I am an option writer, I understand that I am still liable for exercise against me within one business day following the expiration of the option contract.

8. I understand that should I have any open short position in options during the month of expiration which is in the money or near the exercise price, it is most likely it will be assigned on my short position as a writer of an option. Therefore, I should not take any action until I have received a notification from you that you have received all notices of Assignment for your accounts, and that the particular open short Options in the accounts have or have not been called or put. I also understand that notices of Assignment for option contracts are allocated among customers on a random selection basis and that a more detailed description of your allocation procedure is available upon request.

9. I am aware of Webull's requirements and time limitations for accepting an exercise notice before expiration date. I understand that I may not receive actual notice of exercise until the week following exercise. I bear full responsibility for taking action to exercise or sell valuable options; however, in the absence of my notification to you to exercise a valuable options contract one business day prior to the last business day of expiration date of the options contract by 4:30 pm EST, I agree that Apex may exercise the options contract on my behalf. In the event of such exercise, the profit in excess of commission costs created thereby will be credited to my account. If I do not instruct you to exercise the valuable option by the time stated above, I waives any and all claims for damage or loss arising out of the fact that the option was not exercised. I understand that Apex utilizes a random method of allocation for all option(s) assignments received from the Option Clearing Corporation. Exercise assignment notices for options contracts are allocated among all customers' short positions within that series. This is accomplished by a manual procedure, which randomly selects from among all customer short positions, including positions established on the day of assignment, those contracts which are

subject to exercise. All American short positions are liable for assignment at any time. I understand that a more detailed description of this procedure is available upon request.

10. I agree to maintain in my account(s) with you such margin as you deem necessary or advisable, which may be changed by you from time to time, for the protection of your position as endorser of option contracts issued pursuant to my orders, and to respond to any and all margin calls issued by you in connection with such account(s). If I fail to comply with your margin calls you are authorized, in your discretion and without notification to me, to take such action as you may deem appropriate to protect the position and obligation which you may have assumed at my request. This authorization is intended to include (without limitation thereby) the purchase and sale for my account and risk of any part or all of the shares represented by options endorsed by you at my request, and the purchase for my account and risk for such additional puts and calls as you may deem necessary to fully protect yourselves. Any securities and funds held by you in any account of mine with you shall be held by you as security for the performance by me of my obligation to you under this agreement.

11. This agreement is supplementary to a Margin Agreement simultaneously or heretofore entered into between us and shall in no event be deemed to abrogate or in any other way diminish any of your rights under the Margin Agreement; provided, however, that in the event of any conflict between the terms of this agreement and the terms of the Margin Agreement, the provisions of this agreement shall prevail.

12. You shall not be liable for loss caused directly or indirectly by government restriction, exchange or market rulings, war, strikes, or any other conditions beyond your control.

13. The provisions of this agreement shall apply to all put options, call options, or other options which may have been previously purchased, sold, executed, handled, endorsed or carried for my account(s) and shall also apply to all put options, call options or other options which you may hereafter purchase, sell, handle, endorse or carry for my account(s) and shall inure to the benefit of your firm as now or hereafter constituted.

14. You are under no obligation to convey to me any information relating to the underlying securities covered by any options in my account(s) or any securities related thereto, or any information relating to the option, whether such information is then or thereafter known or available. I understand that any

information, advice or notification in respect to any option or any underlying securities or securities related thereto which you may give me and which you are not required to give by the terms of this agreement, express or implied, shall not be construed as creating an implied agreement or course of dealing between us and shall not impair the provisions of this or any other agreement between us.

15. AGREEMENT TO ARBITRATE ALL CONTROVERSIES

I represent that I understand the terms of the arbitration clause, as follows:

1. (a) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
2. (b) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
3. (c) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
4. (d) The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.
5. (e) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
6. (f) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
7. (g) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

The undersigned agrees, and by carrying an account of the undersigned you agree, that all controversies which may arise between us, including but not limited to those involving any transaction or the construction, performance, or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration under this agreement shall be concluded before the New York Stock Exchange, Inc. ("NYSE") or the Financial Industry Regulatory Authority. ("FINRA"), and in accordance with its rules then in force. I may elect in the first instance whether arbitration shall be conducted before the NYSE or the FINRA, but if I fail to make such election, by registered letter or telegram addressed to you at your main office, before the expiration of five days after receipt of a written request from you to make such election, then you may

make such election. Judgment upon the award of arbitrators may be entered in any court, state or federal, having jurisdiction.

16. Class-action matters are excluded from arbitration proceedings conducted by the FINRA. Therefore, it is further agreed that the parties to this agreement shall not bring a putative or certified class-action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class-action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until; (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

17. Unless I give specific instructions as to where to direct orders, I hereby authorize you or the introducing broker to select the exchange or market to which my orders are directed.

18. I understand that my options count is subject to further review and acceptance. Transactions in my account made prior to such review and acceptance are valid transactions, notwithstanding future restrictions or limitations you may place on my account. Additional Options FAQs is available through [www.webull.com](www.webull.com).

19. I will not hold you responsible for the availability, accuracy, timeliness, completeness, or security of trading securities through your platform. I therefore agree that you are not responsible for any losses I incur (meaning claims, damages, actions, demands, investment losses, or other losses, as well as any costs, charges, attorneys' fees, or other fees and expenses) in relation to this functionality. Furthermore, I shall be responsible for all expenses incurred by you, including reasonable attorneys' fees in enforcing any provision of or collecting any amounts due you under this agreement.

20. I understand that I may not write call (sell options) on restricted stock, which I own as an insider.

21. I agree that Webull Financial is authorized, in its discretion, should Webull Financial for any reason deem it necessary for its protection, to request and obtain a consumer credit report for Customer.

22. In connection with any transaction in options which have been or may be purchased, sold, exercised or endorsed for my account with Webull Financial which clears through Apex Clearing Corporation, I have read and agree the terms and conditions listed on Apex's Option Agreement.